UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

CHARLENE SUE COX, TRUSTEE OF
CHARLENE SUE COX REVOCABLE
TRUST DATED 10-9-08; ROSE E.
HUTCHINSON; TIMOTHY A.
HUTCHINSON; LESLIE HUTCHINSON;
NICOLAS HUTCHINSON; GEORGE
BURTON REX; MELISSA RAE REX;
ROBERT SHELTON; EDITH SHELTON;
EDITH SHELTON as custodian for AMY
SHELTON; and WILDISH STANDARD
PAVING CO.,

          Plaintiffs,

    v.

HOLCOMB FAMILY LIMITED
PARTNERSHIP, an Oregon limited
partnership; FRED "JACK" W.
HOLCOMB, individually and in his capacity
as Trustee of the HOLCOMB FAMILY
TRUST; JONES & ROTH, P.C., an Oregon
professional corporation; PACIFIC
CONTINENTAL BANK; and UMPQUA
BANK,

          Defendants.

Case No. 3:13-cv-01688-ST

FINDINGS AND
RECOMMENDATIONS

STEWART, Magistrate Judge:

## INTRODUCTION

Eleven plaintiffs filed this putative class action in Multnomah County Circuit Court on behalf of the class of investors who purchased securities issued by two partnerships, Berjac of Oregon (Eugene) and Berjac of Portland. Defendants include: the Holcomb Family Limited Partnership ("HFLP"); Fred "Jack" W. Holcomb, both individually and as Trustee of the Holcomb Family Trust ("HFT"); an accounting firm, Jones & Roth, PC ("J&R"); and two banks, Pacific Continental Bank and Umpqua Bank. Berjac of Oregon, Berjac of Portland, and the Holcomb family are collectively referred to as the "Berjac Enterprise." Complaint, ¶ 20.

Defendant Fred Holcomb and his brother, Robert Holcomb, founded the Berjac Enterprise in 1963. *Id*, ¶ 22. Fred Holcomb is the father of Michael and Gary Holcomb, and directly or indirectly controlled the Berjac Enterprise. *Id.* Until the 2000s, the Berjac Enterprise had offices in Denver, Seattle, Portland, and Eugene. *Id*, ¶ 1. Plaintiffs allege that the Berjac Enterprise, originally started by Fred Holcomb and later operated as separate partnerships by his sons, Gary and Michael Holcomb, held itself out to the investing public as being in the "insurance premium financing" business. *Id*, ¶ 5. Investors were told that the Berjac Enterprise would lend money to companies and individuals to enable them to purchase property insurance and general liability insurance, and that Berjac's loans would be secured by the amount of the borrowers' paid-up, unearned premiums. *Id*, ¶¶ 5, 42.

In 2009, the State of Oregon began an investigation of the Berjac Enterprise's securities business. According to publicly available information, that investigation concluded with findings by the Oregon Division of Finance and Corporate Securities that the Berjac Enterprise had violated the securities laws and assessed hundreds of thousands of dollars in joint and

several fines against the entities and their principals, Mike and Gary Holcomb. *See* http://www.oregonlive.com/business/index.ssf/2012/08/state_securities_regulators_fi.html.

In August 2012, Berjac of Oregon and Berjac of Portland merged under the name Berjac of Oregon. Complaint, ¶¶ 20-21. Shortly after the merger on August 31, 2012, Berjac of Oregon filed a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Oregon, *In re Berjac of Oregon*, Case No. 12-63884-tmr. *Id*, ¶ 20. On October 10, 2012, involuntary Chapter 7 bankruptcy petitions were filed naming debtors Gary and Michael Holcomb. Gill Decl. (docket #36), ¶¶ 3-4 & Exs. B (*In re Gary Lynn Holcomb*, Case No. 12-37701-elp) & C (*In re Michael Stuart Holcomb*, Case No. 13-36272-elp).

Plaintiffs allege that defendants engaged in an orchestrated scheme[1] to sell Berjac securities, which consisted of an unsecured demand note payable by Berjac of Oregon or Berjac of Portland, together with the contract of Berjac of Oregon or Berjac of Portland that each investor could increase the amount of his or her investment at any time by depositing money into his or her Berjac account without new documentation, and that the return on the purchaser's investment would be paid each month or quarter based on the cumulative amount of the investment on the last day of the month or quarter. *Id*, ¶ 2. Plaintiffs allege that their purchases were misrepresented as a safe investment when, in fact, the Berjac Enterprise used investor money for risky real estate developments, to pay personal expenses of the Holcomb family, to repay loans from defendant banks, and to pay other investors a return on their investments when demanded. *Id*, ¶ 49(c)-(g). Almost all the investor money – nearly $60 million – has been lost. *Id*, ¶¶ 2, 39.

---

[1] Originally, plaintiffs alleged that defendants engaged in a "Ponzi scheme." Complaint, ¶ 1. "Generically, a Ponzi scheme is a phony investment plan in which monies paid by later investors are used to pay artificially high returns to the initial investors, with the goal of attracting more investors." *In re Bonham*, 229 F3d 750, 759 n1 (9th Cir 2000). The "original" Ponzi case, *Cunningham v. Brown*, 265 US 1 (1924), involved "Charles Ponzi, a famous Boston swindler" who, during 10 months beginning in 1919, managed to collect nearly $10 million, starting with capital of only $150. *United States v. Shelton*, 669 F2d 446, 450 n2 (7th Cir 1982). As discussed in detail below, the proposed amended pleading deletes the "Ponzi scheme" allegations.

3 – FINDINGS AND RECOMMENDATIONS

On or about August 23, 2013, plaintiffs filed this action in Multnomah County Circuit Court alleging that the Berjac Enterprise sold securities in violation of ORS 59.115(1)-(3) ("First Claim") and ORS 59.135(2) and .137 ("Second Claim") and alleging a common law claim for aiding the breach of a fiduciary duty against all defendants except J&R ("Third Claim").

On September 23, 2013, defendants Fred Holcomb, J&R, Pacific Continental Bank, and Umpqua Bank filed a Notice of Removal (docket #1) to this court, invoking jurisdiction premised on:  (1) 28 USC § 1334(b) as a civil proceeding "related to" cases under the Bankruptcy Code (Notice of Removal, ¶ 4); and (2) the "minimal diversity" subject matter provision of the Class Action Fairness Act of 2005 ("CAFA"), 28 USC § 1332(d)(2)(A) (*id*, ¶ 5). The parties agree that this court has jurisdiction over this case under both of these provisions.

However, plaintiffs contend that this court either must or may decline to exercise the jurisdiction granted by 28 USC 1332(d)(2) by reason of three exceptions built into the CAFA. Those exceptions are the mandatory "local controversy" and "home state" exceptions (28 USC § 1332(d)(4)(A) and (B)) and the discretionary "interest of justice" exception (28 USC § 1332(d)(3)).  Thus, plaintiffs have filed a Motion to Decline to Exercise Jurisdiction, to Abstain, and to Remand (docket #19) asking the court to:

(1) pursuant to either 28 USC § 1332(d)(4) or § 1332(d)(3), decline to exercise the minimal diversity jurisdiction it admittedly acquired under 28 USC § 1332(d)(2);

(2) pursuant to 28 USC § 1447(c), remand to state court for lack of subject matter jurisdiction;

(3) pursuant to 28 USC § 1452(b), remand on "equitable grounds" any claim over which this court has jurisdiction under 28 USC § 1334; and

(4) pursuant to 28 USC § 1334(c), abstain from this proceeding as it is related to a case under Title 11.

After a hearing on that motion, plaintiffs filed a Motion for Leave to File a First Amended Complaint (docket #42) to clarify the class definition as it relates to the exercise of jurisdiction. As discussed in more detail below, that motion to amend should be granted, and this court should: (1) decline to exercise the jurisdiction it admittedly has under the "minimal diversity" provision of the CAFA, 28 USC § 1332(d)(2), under both CAFA's mandatory "local controversy" and "home state" exceptions (28 USC § 1332(d)(4)(A), and (B)) and under the discretionary "interest of justice" exception (28 USC § 1332(d)(3)); (2) exercise jurisdiction over this case only under 28 USC § 1334(b); (3) defer a ruling on whether equitable remand is appropriate; and (4) refer this case – including that reserved issue – to the United States Bankruptcy Court for the District of Oregon pursuant to Local Rule of Bankruptcy Procedure 2100-1(a).

## FINDINGS

### I. Initial Jurisdictional Issues

The parties agree that this court has jurisdiction over this case based on the "minimal diversity" provision of the CAFA, 28 USC § 1332(d)(2), and the "related to" provision of the Bankruptcy Code, 28 USC § 1334(b). However, they disagree as to whether jurisdiction also arises under 28 USC § 1453, an issue raised by defendants in response to plaintiffs' request for remand.

The CAFA's "minimal diversity" provision, 28 USC § 1332(d)(2), confers this court with original jurisdiction over class actions in which the matter in controversy exceeds $5 million and in which any member of the plaintiff class is a citizen of a state or foreign state different than any

defendant.  Plaintiffs allege damages of more than $10 million.  Plaintiff Nicolas Hutchinson, who claims to be a class member, is a citizen of California. Gill Decl., ¶ 18 & Exs. W-1, W- 4. The named defendants are all citizens of Oregon.[2]  Accordingly, this court has jurisdiction under the "minimal diversity" provision of 28 USC § 1332(d)(2).

There is also no dispute that this court has jurisdiction over this case as "related to" a bankruptcy proceeding pursuant to 28 USC § 1334(b).  This case is related to at least three bankruptcy proceedings, including one filed by Berjac of Oregon, and two more involuntary proceedings naming Michael and Gary Holcomb.[3]

In their Joint Opposition to Plaintiffs' Motion to Decline Exercise of Jurisdiction (docket #34), defendants also contend that this court has original jurisdiction over this case pursuant to 28 USC § 1453.  They candidly point out that they can locate no case addressing the argument that § 1453 provides an independent basis for jurisdiction.  When they removed this case, defendants did not assert § 1453 as a basis for removal independently of 28 USC § 1332(d)(2)(A).  Notice of Removal, ¶¶ 3, 5.  To the degree they now argue that § 1453 provides an independent basis for jurisdiction, that argument should be rejected.  This court agrees with plaintiffs that § 1453 addresses only the procedure for removal.  *See Carvalho v. Equifax Info. Servs.*, 629 F3d 876, 884 (9th Cir 2010) (describing jurisdictional reach of 28 USC § 1332(d), and specifying that actions which fit CAFA's requirements "may be removed from state court pursuant to 28 U.S.C. § 1453(b)"); *see also Pritchett v. Office Depot, Inc.*, 420 F3d 1090, 1097 n7 (10th Cir 2005) ("general sentiments" that CAFA was designed to increase access to federal courts and is to be broadly construed "do not provide *carte blanche* for federal

---

[2]  Fred Holcomb is registered to vote in Oregon and is the trustee of the HCT.  The HFLP and J&R are an Oregon partnership and an Oregon corporation, respectively.  Pacific Continental Bank and Umpqua Bank are Oregon-chartered banks.

[3]  The record also references several additional related bankruptcy proceedings.  *See* Gill Decl., ¶¶ 9-10, 12-13; Walker Decl. (docket #35), ¶ 3.

jurisdiction over a state class action any time the statute is ambiguous"), citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 US 100, 108-09 (1941).

Even though this court has "minimal diversity" jurisdiction under the CAFA, plaintiffs contend that it either must or should decline to exercise jurisdiction under the CAFA exceptions and must refer this case to the United States Bankruptcy Court for further proceedings pursuant to Local Rule of Bankruptcy Procedure 2100-1(a).  For the reasons that follow, this court agrees with plaintiffs.

## II.  Timeliness of Motion to Remand

As a threshold issue, defendants argue that plaintiffs' motion to remand is untimely under 28 USC § 1447(c).  The Notice of Removal in this case was filed on September 23, 2013.  On October 23, 2013, 30 days later, plaintiffs filed their motion to remand based on the three exceptions to CAFA jurisdiction.  Nevertheless, defendants contend that plaintiffs' current bid for remand depends upon their later filed motion to amend and that, therefore, the relevant date is either:  (1) December 12, 2013, when plaintiffs first proposed amending their Complaint in their Reply memorandum filed in support of remand (docket #39); or (2) January 10, 2014, when they filed their motion to amend (docket #42).  Both dates are more than 30 days after this case was removed from state court.

To the extent defendants seek to impose a 30-day limit on plaintiffs seeking a remand under 28 USC § 1447(c) based on the three CAFA exceptions for declining jurisdiction, their argument should be rejected.  That 30-day limit applies to a "motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction."  28 USC § 1447(c).  Because the exceptions to CAFA jurisdiction are "akin to an abstention doctrine," they are not viewed as a "defect" under § 1447(c) which triggers the 30-day limitation.  *Graphic Commc'ns Local 1B*

*Health & Welfare Fund "A" v. CVS Caremark Corp.*, 636 F3d 971, 974-75 (8th Cir 2011) ("the local controversy provision [of CAFA] was not a 'defect' within the meaning of section 1447(c)"), citing *Kamm v. ITEX Corp.*, 568 F3d 752, 755 (9th Cir 2009) (the 30-day limit did not apply to a forum selection clause because it was not a "defect" within the meaning of the removal statute.); *see also*, *e.g.*, *Lippincott v. PNC Bank, NA*, Civil No. ELJ-12-463, 2012 WL 1894275 at *4 (D Md May 22, 2012) (citations omitted) ("a clear majority of . . . federal appellate courts that have considered this issue have held that the thirty-day limitation of § 1447(c) does not apply to a motion to remand on the basis of abstention or other bases not encompassed in § 1447(c)").

Moreover, even if the 30-day limitation applies, plaintiffs raised the CAFA exceptions in their motion to remand which was filed within 30 days after removal. This court is not persuaded that it should put on blinders and ignore the fact that the CAFA exceptions were timely placed in issue.

Furthermore, even if the motion to amend was the first date when the complete nature of plaintiffs' request for remand could be understood, it still falls within the "reasonable" time frame within which a party must seek remand when not bound by the 30-day restriction of § 1447(c). In *CVS Caremark*, 636 F3d at 976, the Eighth Circuit remanded the case to the district court to determine whether a motion to remand, filed more than 100 days, after removal was timely. Part of the delay was due to consideration by the district court of a motion to dismiss filed by defendants pursuant to a stipulated extension of time just outside the 30-day window. Here, plaintiffs filed both their motion to remand and a request to extend the briefing schedule to respond to three motions to dismiss filed by defendants 12 days earlier. Thereafter, this court set a hearing on the motion to remand and deferred a ruling on the motions to dismiss

until after a final ruling on the motion to remand (docket #30).  The issue of amending was

raised in the normal course of the briefing on the motion to remand and discussed at length

during the hearing.  Requests for additional time and further briefing followed, all of which were

granted by this court with an eye toward fully vetting the complex issues raised in these motions.

This case has been hard-fought and well-presented by both sides.  On the present record, this

court has no difficulty in concluding that the motion to remand, including all its constituent parts,

was raised within a "reasonable" time, such that plaintiffs' motion should not be rejected on that

basis.[4]

### III.  Proposed Amendments

In response to defendants' arguments that plaintiffs failed to sufficiently limit the

proposed class definition or to provide sufficient evidence of the citizenship of the putative class

members to fall within the CAFA exceptions, plaintiffs filed the motion to amend.  Plaintiffs

contend that their proposed amended pleading, as revised, combined with their factual

submissions, either mandates or allows this court to decline to exercise its jurisdiction under the

CAFA.

The original Complaint proposed four classes of plaintiffs, including:  (1) the "Berjac

Class," consisting of all persons who were sold Berjac Securities from January 1, 1992, to

August 31, 2012; (2) the "Umpqua Subclass," consisting of all persons who were sold Berjac

Securities from January 1, 1992, to mid-2009; (3) the "Pacific-Century Subclass," consisting of

all persons who were sold Berjac Securities from mid-2009 to August 31, 2012; and (4) the

"Fred Holcomb Subclass," consisting of all persons to whom Fred Holcomb directly or indirectly

---

[4] At the hearing, in an apparent reference to LR 2100-7(b), plaintiffs expressed concern that they not be deemed to have run afoul of the requirement that motions to remand be raised in the Bankruptcy Court within 30 days.  Transcript, p. 15.  Given that plaintiffs expressly raised the issue of requesting equitable remand by the Bankruptcy Court in their motion to remand, and given that this court recommends deferring that issue for consideration by the Bankruptcy Court, this court discerns no timeliness issue.

sold or successfully solicited the sale of Berjac Securities from January 1, 1992, to August 31, 2012.  Complaint, ¶ 11.

The initial proposed First Amended Complaint ("FAC") (attached to docket #42): (1) deleted all claims except the First Claim for violation of ORS 59.115; (2) deleted all "Ponzi scheme" allegations; and (3) revised the class definition to include only those persons who were citizens of Oregon on August 23, 2013, in order to incontrovertibly fit within the CAFA exceptions.  After further briefing, plaintiffs submitted a Revised Proposed First Amended Complaint ("Revised FAC") (attached to docket #51) which again deleted all claims except for violations of ORS 59.115 and deleted all "Ponzi scheme" allegations.  However, the Revised FAC removes the requirement that the class include only persons who were Oregon citizens. Revised FAC, ¶ 11.  As a result, the class definition in the Revised FAC is substantively the same as in the original Complaint in terms of the citizenship of the potential class members.

The parties spent the bulk of their initial briefing addressing whether an amendment limiting the members of the class to those who are Oregon citizens may be the basis for a challenge under the CAFA exceptions.  Plaintiffs cited language from several courts, including the Ninth Circuit, allowing plaintiffs to limit their class allegations to avoid removal into federal court.  *See*, *e.g.*, *Mondragon v. Capital One Auto Fin.*, 736 F3d 880, 885 (9th Cir 2013) ("Mondragon could have limited the class by defining it to consist only of California citizens . . . ."); *In re Sprint Nextel Corp.*, 593 F3d 669, 673 (7th Cir 2010) (citations omitted) ("[P]laintiffs are free to 'circumscribe their class definitions' so that they can fit within one of those exceptions and avoid federal jurisdiction.").  However, those cases discuss avoiding federal jurisdiction altogether, not amending a complaint over which a federal court admittedly has jurisdiction in order to invoke CAFA exceptions to exercising jurisdiction.

In response, defendants strenuously contended that such a pleading amendment could not be considered, based partly on *Hargis v. Access Capital Funding, LLC*, 674 F3d 783 (8th Cir 2012), which rejected an attempt to establish a CAFA exception by a post-removal amendment limiting class membership to only Missouri plaintiffs.  Defendants also cited cases in which courts determined that denials of class certification could not provide the basis of a remand under CAFA (*see*, *e.g.*, *United Steel, Paper & Forestry, Rubber Mgf., Energy, Allied Indus. & Serv. Workers Int'l Union v. Shell Oil Co.*, 602 F3d 1087 (9th Cir 2010)), that dismissal of class allegations after removal did not oust the court of jurisdiction (*see*, *e.g.*, *In re Burlington N. Santa Fe Ry. Co.*, 606 F3d 379 (7th Cir 2010)), and that a stipulation restricting the damages sought to under the $5 million threshold would not provide a basis for remand (*see*, *e.g.*, *Standard Fire Ins. Co. v. Knowles*, ___ US ___, 133 S Ct 1345 (2013); *Adams v. Am. Family Mut. Ins. Co.*, 981 FSupp2d 837 (SD Iowa 2013)).  These cases similarly do not address the amendments proposed in the Revised FAC.  Plaintiffs have not proposed limiting their damages below the minimal amount required for jurisdiction under the CAFA or eliminating their class allegations, and this court has not had the opportunity to rule on – much less deny – a request for class certification.

The submission of the Revised FAC eliminates the need to consider those particular issues because plaintiffs no longer seek to restrict class membership only to Oregon citizens. Similarly, the proposed elimination of all claims except the First Claim for violation of ORS 59.115(1)-(3) and elimination of the "Ponzi scheme" allegations are irrelevant to the analysis of the application of the CAFA exceptions at issue.  Nevertheless, defendants argue that the Revised FAC broadens the class definition in ways that may not be considered, namely by including:  (a) persons who were sold Berjac Securities any time prior to August 31, 2012

(Revised FAC, ¶ 11), not just between January 1, 1992, and August 31, 2012; (b) persons "who received an assignment or other transfer of an Oregon Securities Law claim directly or indirectly from a person described in [the "Berjac Class" definition], and who are not excluded from the class pursuant to [new] subparagraph (e)" (*id*, ¶ 11(a)(2), (b)(2), (c)(2), (d)(2)); and (c) persons "who are co-claimants with a person described in subparagraphs (a)(1) or (a)(2), and who are not excluded from the class pursuant to [new] subparagraph (e)" (*id*, ¶ 11(a)(3), (b)(3), (c)(3), (d)(3)).[5]

The Revised FAC adds only one category of potential class members not explicitly included in the original Complaint, namely anyone who purchased a Berjac security prior to January 1, 1992.  The January 1, 1992 date was initially included because it was apparently the earliest purchase date by the lead plaintiff.  Complaint, ¶ 3.  That date was carried over into subsequent allegations defining the class, as well as into other allegations describing the conduct of two defendants.  *Id*, ¶¶ 11 (class definitions), 25 (J&R), 31, 36 (Umpqua Bank).  In the Revised FAC, the class definition is amended to include any purchase made prior to the filing of the Berjac bankruptcy on August 31, 2012.  Revised FAC, ¶ 11.  Additionally, the Revised FAC clarifies plaintiffs' theory that the defendant banks (Pacific Continental Bank and Umpqua Bank) and the accounting firm (J&R) are liable for sales of Berjac securities on and after January 1, 1992.  *Id*, ¶ 4 (the banks and J&R "participated and materially aided in the sales of Berjac Securities.  Without the Banks and Jones and Roth, Berjac could not have sold Berjac Securities to class members after January 1, 1992." ).

---

[5] The Revised FAC, ¶ 11(e), also adds a lengthier description of those persons excluded from the class, namely persons who are themselves "liable under ORS 59.115(1) or (3)" to any class member, "members of the immediate family of such persons," and all "persons who opt out" of the class.  In contrast, the original Complaint excludes plaintiffs who were "members of the Holcomb Family or employees of Berjac of Oregon or Berjac of Portland."  Complaint, ¶ 11(a)-(d).

The record does not definitively reveal the number of persons who purchased Berjac securities prior to January 1, 1992.  Nonetheless, defendants insist that opening the timeframe of the class to include purchases prior to January 1, 1992, is a significant change to the class definition.  This court disagrees.

The remaining allegations indicate that the alleged investments were ongoing.  Investors were able to increase the amount of their investment at any time by depositing money into the Berjac account and the return on the investment would be paid based on the cumulative amount of the investment on the last day of the month or quarter.  Complaint, ¶ 2; Revised FAC, ¶ 2. These later investments would provide a basis to claim a securities violation as of the later date(s) when additional investment funds were added.  *McDonough v. Jones*, 48 Or App 785, 790-91, 617 P2d 948, 951 (1980) (under ORS 59.115, each separate deposit in exchange for a note was "separately actionable, beginning at the time of each individual sale").  Plaintiffs have identified as potential class members those persons Berjac listed as creditors and those who filed claims in the Berjac bankruptcy proceeding (between September 11, 2012, and November 15, 2013).  Because later deposits would provide the basis for a claim, the only potential class members who would be excluded under the original Complaint, but included under the Revised FAC, are those who invested prior to January 1, 1992, and made no further deposits after that date.  In other words, the Revised FAC adds only those potential class members who initially invested in Berjac over 20 years ago, kept their investment account open, but added no additional funds to it during the two decades between January 1, 1992, and August 31, 2012.  Defendants have identified no person in that category.  Defendants have supplied evidence that Mary Ann Brown and her husband invested in Berjac prior to 1992 and that, by August 31, 2012, had over

$500,000 invested in their Berjac accounts.  Gill Decl., Ex. M, p. 2.  However, no evidence indicates one way or the other that all of the Browns' investments were made prior to 1992.

Additionally, defendants point out that the list of potential class members includes a number of individuals who were minors when their claims were filed.  Given that the claims were filed between September 11, 2012, and November 15, 2013, any of the individuals in that category were, by definition, born after January 1, 1992.  Any investment by or on behalf of those individuals would necessarily have been made after January 1, 1992, within the class definition under both the original Complaint and the Revised FAC.

The remaining changes to the class definition proposed in the Revised FAC include assignees or transferees of a claim directly or indirectly from a class member, as well as persons who are co-claimants with a class member.  This court does not agree with defendants that these two changes drastically alter the makeup of the class identified in the initial Complaint.  Instead, these changes are more in the nature of clarifications rather than significant amendments.  The Revised FAC sets out to simplify and streamline the class definitions and allegations.  For instance, the initial Complaint identified a long series of allegedly misleading representations (Complaint, ¶¶ 48-49), while the Revised FAC simply uses the shorthand of a sale "in violation of ORS 59.115(1)" (Revised FAC, ¶ 11(a)(1)).  Similarly, the initial Complaint includes those persons who were sold Berjac Securities "whose account balances resulting from purchase of Berjac securities have not been fully paid" (Complaint, ¶ 11(a)), while the Revised FAC includes those "who are owed money by Berjac with respect to the security" and those who received an assignment or other transfer, and co-claimants with such persons (Revised FAC, ¶ 11(a)(1)-(3)).  While the initial Complaint does not expressly identify assignees, transferees, and co-claimants

as being included, the class definition is sufficiently broad to include such class members by implication.  Simply put, the initial Complaint is not limited to direct purchasers.

Moreover, even were this court to assume that assignees and transferees were excluded from the class definition in the initial Complaint, the numbers of such potential class members appears insignificant.  According to the long-time office managers of Berjac of Oregon and Berjac of Portland, assignment or transfer of Berjac notes was a rarity.  Chalmers Decl. (docket #55), ¶ 4.  They recall only one or two such transfers in 18 years (Van Breemen Decl. (docket #56), ¶ 4) or, at most, fewer than a dozen such transfers over 15 years (Chalmers Decl., ¶ 4). Rather than transfer a note, note-holders typically opted to liquidate their interests.  Sometimes note-holders added additional owners onto their accounts, most often by adding spouses or children, but in those cases, the original note-holders remained as note-holders themselves.  *Id*.

In sum, the proposed amendments have little or no substantive significance to the jurisdictional analysis.  Therefore, plaintiffs' motion to amend should be granted.  However, to avoid any concerns when analyzing the CAFA exceptions, the court will consider only the class definition alleged in the initial Complaint, while noting, as appropriate, the parallel allegations in the Revised FAC.

## IV.  CAFA Exceptions

### A.  Requirements of the Exceptions

When certain other requirements are met,[6] two exceptions under the CAFA require a court to decline to exercise jurisdiction when:  (1) "greater than two-thirds of the members of all

---

[6]  The remaining requirements are clearly satisfied in this case.  Specifically:  "(a) at least one defendant is one:  (1) from whom the members of the plaintiff class seek significant relief; (2) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and (3) is a citizen of the State in which the action was originally filed; and (b) no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons."  28 USC § 1332(d)(4)(A)(i)(II).  Defendants contend that plaintiffs are not entitled to rely on the local controversy exception because plaintiffs' principal injuries were caused by the conduct of the three bankruptcy debtors (Berjac,

proposed plaintiff classes in the aggregate are citizens of the State in which the action was

originally filed" ("local controversy" exception, 28 USC § 1332(d)(4)(A)(i)(I)); or (2) "two-

thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary

defendants, are citizens of the State in which the action was originally filed" ("home state"

exception, 28 USC § 1332(d)(4)(B)).[7]  Absent this mandate to decline to exercise jurisdiction

and based on consideration of a variety of statutorily listed factors (28 USC § 1332(d)(3)(A)-

(F)), the court "may, in the interests of justice and looking at the totality of the circumstances,"

decline to exercise its CAFA jurisdiction "over a class action in which greater than one-third, but

less than two thirds of the members of all proposed plaintiff classes in the aggregate and the

primary defendants are citizens of the State in which the action was originally filed."  28 USC

§ 1332(d)(3).

The burden of proof for establishing the applicability of a CAFA exception rests on the

party seeking remand.  *Serrano v. 180 Connect, Inc.*, 478 F3d 1018, 1024 (9th Cir 2007).  The

"court makes factual findings regarding jurisdiction under a preponderance of the evidence

standard."  *Mondragon*, 736 F3d at 884.  Plaintiffs may not simply rely on their own allegations

to satisfy their burden:  "The statute does not say that remand can be based simply on a

plaintiff's allegations, when they are challenged by the defendant. . . . A complete lack of

evidence does not satisfy [the preponderance of the evidence] standard."  *Id*.  On the other hand,

plaintiffs are not required to submit multiple points of data probative of the citizenship of each

potential class member.  Plaintiffs "may rely on the presumption of continuing domicile, which

provides that, once established, a person's state of domicile continues unless rebutted with

---

Michael Holcomb, and Gary Holcomb), not by any of the defendants named in this case.  This assertion is not borne out by the plaintiffs' allegations and will not be addressed further.

[7]  As noted earlier, all defendants are Oregon citizens.  Accordingly, the only issue concerning this exception is the citizenship of the members of the plaintiff classes.

sufficient evidence of change." *Id* at 886.  The Ninth Circuit also observed that "numerous

courts treat a person's residence as *prima facie* evidence of the person's domicile." *Id* at 886

(citations omitted).  Because the issue was not squarely presented by that appeal, the court

admonished simply that there "must ordinarily be at least some facts in evidence from which the

district court may make findings regarding class members' citizenship for purposes of CAFA's

local controversy exception" and explained that a "court should consider 'the entire record' to

determine whether evidence of residency can properly establish citizenship." *Id* at 884, 886,

quoting *Preston v. Tenent Healthsystem Mem'l Med. Ctr., Inc.*, 485 F3d 793, 800 (5th Cir 2007)

(remaining citations omitted).

    In this case, the critical issue is whether plaintiffs have shown, by a preponderance of the

evidence either that:  (1) more than two-thirds of the members of the plaintiff class are Oregon

citizens, such that this court "must" (due to the "home state" or "local controversy" exceptions)

decline to exercise jurisdiction; or (2) more than one-third of the members of the plaintiff class

are Oregon citizens, such that this court "may" (under the "interests of justice" exception)

decline to exercise jurisdiction.  Based on an exhaustive review of plaintiffs' submissions, this

court finds that they have satisfied their burden of proving that:  (a) more than two-thirds of all

potential class members are Oregon citizens; or (b) if the number of potential class members who

are Oregon citizens misses the two-thirds mark, it does so only by a few percentage points.

Under either scenario, this court must or should decline to exercise jurisdiction under the CAFA

and must refer the matter to the United States Bankruptcy Court for the District of Oregon.

### B.  Citizenship Submissions

    In their initial submissions on the citizenship issue, plaintiffs identified the potential

members of the proposed class by compiling the names of each person who appeared to be an

investor in the Berjac bankruptcy case, including those who filed claims and those who appeared

on Amended Schedule F (Creditors Holding Unsecured Nonpriority Claims), filed by Berjac in

the bankruptcy litigation (*In re Berjac of Oregon*, docket #154).  Antoine Decl. (docket #22), ¶ 2.

Plaintiffs then separated out natural persons, corporations, trusts, LLCs, and custodians.  *Id*, ¶ 6.

If claims filed by natural persons in the bankruptcy case did not give what appeared to be a

residence address, plaintiffs used voter registry records to identify addresses.  *Id*, ¶ 7.  For

entities located in Oregon, plaintiffs determined whether they were Oregon corporations and,

where that information was available on the Oregon Secretary of State's web site, identified the

members of LLCs.  *Id*, ¶ 8.  As a result, plaintiffs concluded that of the 494 persons who

submitted claims in the Berjac bankruptcy or are listed on Amended Schedule F, 381 (more than

77% ) are residents of Oregon, well over the two-thirds needed under the mandatory CAFA

exceptions.  *Id*, ¶ 11.

Defendants raised a number of objections to plaintiffs' methodology and submissions,

which plaintiffs addressed both by submitting the Revised FAC and additional evidence.  Among

other objections, defendants objected to the survey contained in the declaration of plaintiffs'

lawyer (docket #53) as improper.  In response, plaintiffs contacted numerous investors whose

residence was challenged and by obtaining declarations from them as to their domicile.

Plaintiffs then filed a Supplemental Memorandum in Support of Motion to Remand (docket #78)

and Update (docket #84) addressing most of defendants' objections with supplemental

declarations showing that the proposed class consists of 501 persons, of whom 366 (73%) are

Oregon citizens and 135 are non-Oregon citizens.  Since two-thirds of 501 is 334, plaintiffs

contend that they have a 32 investor margin in their favor.  Defendants then filed a Further

Response to Plaintiffs' Supplemental Memorandum in Support of Motion to Remand (docket

#86) objecting to any post-removal amendments to the class definition.  For purposes of

resolving the CAFA exceptions, defendants' objections are set forth in two declarations

(Declaration of Jacob S. Gill (docket #36) and Supplemental Declaration of Jacob S. Gill (docket

#61)) to which plaintiffs have responded with a revised list of potential class members. Stephens

Supp. Decl. (docket #79), Ex. 1.  As discussed below, despite defendants' various objections,

one or more of the CAFA exceptions apply.

### C.  **"Home State" and "Local Controversy" Exceptions**

Disputing the applicability of the mandatory CAFA exceptions, defendants initially

contended that the list of potential class members included persons who did not purchase Berjac

securities.  In response, plaintiffs obtained from Berjac's records a list of all the investors in

Berjac of Oregon and Berjac of Portland as of the date of the Berjac bankruptcy filing on

August 31, 2012, along with the address shown in Berjac's records of all those investors who

were owed money by Berjac at that time.  Chalmers Decl., ¶ 3; Van Breemen Decl., ¶ 3.  In

response to the attack that some investor accounts were listed at business addresses or drop

boxes, plaintiffs confirmed that, in each case, the investor is in fact an Oregon citizen.  Stephens

Supp. Decl. (docket #79), ¶¶ 2(a), 4.  A number of entries had been double or triple counted,

which plaintiffs corrected.  *Id*, ¶¶ 2(h), 11-12; Gill Supp. Decl., ¶ 3(f).  Because several

investors' addresses were listed as the addresses for relatives who are also investors, plaintiffs

obtained further information concerning the citizenship of the related investors and made

corrections accordingly.  Stephens Supp. Decl., ¶¶ 2(b)-(f), 5-9; Declarations of Joyce Kruger

(docket #71), Susan Abbott (docket #80), Ruth Pohll (docket #81), Debra Stanley (docket #82),

and Paralee Mock (docket #85).

Defendants also challenged potential co-claimants as being listed at the same address as certain other investors, but plaintiffs marshalled evidence that 17 of the 21 challenged potential co-claimants are Oregon citizens.  Stephens Supp. Decl., ¶¶ 5-9 (Paralee Mock (six co-claimants, all Oregon citizens), Joyce Kruger (five co-claimants, all but two Oregon citizens), Ruth Pohll (four co-claimants, one co-claimant now deceased, two Oregon and one non-Oregon citizen), Susan Abbott (three co-claimants, all Oregon citizens), Debra Stanley (three co-claimants, all Oregon citizens)).  For the 14 persons identified by defendants as having no apparent connection to the address initially given, plaintiffs determined that 12 were in fact Oregon citizens.  *Id*, ¶ 10; Gill Supp. Decl., ¶ 3(e).

Of the other challenges raised by defendants, this court concludes that several are sufficient to require adjustment of the numbers submitted by plaintiffs on the issue of the percentage of potential class members who are Oregon citizens.

First, defendants challenge some of the entries based on a lack of complete information. Gill Decl., ¶ 15(g) & Ex. T.  Of those seven challenges, plaintiffs addressed four.  Stephens Supp. Decl., Ex. 1 (docket #79-1), pp. 2 (clarifying Oregon nonprofit corporate name of "Grace Evangelical Lutheran Congregation U.A.C., of Eugene, Lane County, Oregon"), 4 (Doreen Wall[8] listed as individual claimant, without reference to "THS Class of 1981" and clarifying corporate status of "KRJ Investments"), and 5 (clarifying corporate name of "Skeie's Jewelers, Inc.").  This leaves three ("Fish," "Mad Fish SEO," and "Lane County Pharmaceutical Association, Inc.") that are listed as Oregon citizens, but with insufficient evidence to count them as such.

Defendants also challenged 14 entries as "listing no residential address."  Gill Decl., ¶ 15(e) & Ex. R.  Plaintiffs either removed or provided additional information verifying

---

[8]  As discussed below, despite this correction, Doreen Wall should be excluded as a potential class member in any event due to the lack of a residential address.

citizenship for 11 of those entries.  The remaining three (Giustina Ehrman, Chanda Mills, and

Alta Bessett) are all listed at post office box addresses.  Stephens Supp., Decl., Ex. 1, pp. 1, 4, 5.

As discussed below, this court excludes them on that basis.

Defendants also contended that certain persons must be excluded as potential class

members who are Holcomb family members or other potential or alleged insiders of the Berjac

Enterprise.  Gill Decl., ¶ 15(c) & Ex. P; Gill Supp. Decl., ¶ 3(g).  The original Complaint

excludes class members who knew of a misleading omission, are "members of the Holcomb

Family," or are Berjac employees.  Complaint, ¶ 11(a).  However, only Fred, Robert, Michael,

and Gary Holcomb are identified in the Complaint as members of the "Holcomb Family."  *Id*,

¶ 2.

Plaintiffs list Robert Holcomb as an Oregon citizen.[9]  He clearly should be excluded as a

class member.  Plaintiffs also list as Oregon citizens the Robert Holcomb Family LLC, four

children of Mike Holcomb (Emily Holcomb, Jennifer Chalmers, Kristen van Breemen, and Grant

Holcomb), the spouses of two of Mike Holcomb's children (Justina Trivett and Michael

Chalmers), and four "apparent dependents" of those children (Jonah van Breemen, Mimi van

Breemen, Jackson Chalmers, and Marilee Chalmers) who possibly are the grandchildren of Mike

Holcomb.  Stephens Supp. Decl., Ex. 1, pp. 6, 8.  It is far from clear that these Holcomb relations

should be excluded as class members either as Holcomb family members or insiders.

Defendants identify alleged insiders based on various documents filed in the Berjac

bankruptcy identifying certain "Insider Payments" and stating the alleged familial relationship

with the "insider," identifying "insiders" in Adversary Proceeding Complaints, and listing certain

---

[9]  Robert Holcomb was listed as the Trustee of the Holcomb Living Trust on plaintiffs' first listing of class members.  Gill Decl., Ex. P; Antoine Decl. (docket #22), Ex. A, p. 7.  However, on the most recent listing, Robert Holcomb is listed as an individual class member.  Stephens Supp. Decl., Ex. 1, p. 6.

individuals at the same address as these alleged insiders to show a familial relationship.  Gill

Decl., Ex. P.  The difficulty with excluding these potential class members at this juncture is

twofold.  First, the Complaint limits the excluded "Holcomb Family" to only Fred, Robert,

Michael, and Gary Holcomb.[10]  Second, and perhaps more importantly, exclusion from the class

depends upon facts as yet unproven, namely knowledge of the omissions (under the initial

Complaint) or liability established under ORS 59.115 (under the Revised FAC).  It is

inappropriate to assume that a familial relationship alone – and particularly more attenuated

relationships such as those listed by defendants – automatically excludes a particular individual

from the plaintiff class.  The record is silent concerning how these individuals participated (if at

all) in the Berjac Enterprise.  Thus, this court finds it inappropriate at this early juncture to

exclude the children of Mike Holcomb[11] or other individuals purportedly related to Fred, Robert,

Michael, and Gary Holcomb by marriage to their children or as "apparent" dependents (possibly

grandchildren), cousins, or spouses of cousins.

Similarly, nothing in the class definition presumptively excludes as class members those

who are alleged "business associates," much less the "apparent" spouses of such business

associates.  Unless and until particular persons are determined to have the requisite knowledge,

liability, or familial connection, they are properly included as potential class members.  At this

stage of the proceedings, there is no basis to exclude anyone on defendants' list of Holcomb

family members or insiders (Gill Decl., Ex. P), other than Robert Holcomb.

Defendants also assert that plaintiffs have failed to give any residential address for a

number of other individual potential class members listed as Oregon citizens.  In total, plaintiffs

---

[10] While the Revised FAC would arguably sweep more members in to its reach, it does not define the term "immediate" family member.

[11] According to the Amended Statement of Financial Affairs filed in the Berjac bankruptcy, this includes Emily Holcomb, Grant Holcomb, Kristen van Breemen, and Jennifer Chalmers.  Gill Decl., Ex. G., pp. 15-16 & Ex. P.

list as Oregon citizens 18 individuals who have only a post office box address.[12]  Stephens Supp. Decl., Ex. 1, p. 1 (Mary Ellingson (Bandon), Chanda Mills  (Veneta)), p. 2 (Lon Kellstrom (Sisters), Aaron Clunes (Aurora), Robert Clunes (Aurora)), p. 3 (Bernice K. Porter (Creswell)), p. 4 (David Barajas (Eugene), Kathi Peccia (Eugene), Doreen Wall (Eugene), Alta Bessett (Yoncalla), Wendell Gray(Eugene)), p. 5 (Betty Jo Siegrist, Frederick Siegrist, Ehrman V. Guistina (all three in Eugene)), p. 6 (Barbara & Duane Tyler (both in Union), Folkerts[13] (Eugene)), and p. 8 (Lisa Dame (Harrisburg)).  The totality of the circumstances indicate that a residential address or a voter registration are sufficient proof of domicile in Oregon.  However, a post office box address is not necessarily equally probative.

Of the 18 post office box addresses purporting to identify an Oregon citizen, eight are located in Eugene, one in Creswell (12 miles from Eugene), one in Veneta (15 miles from Eugene), two in Aurora (15 miles from the outskirts of Portland), one in Harrisburg (18 miles from Eugene), and the remaining five in other small rural towns (Bandon, Sisters, Yoncalla, Union) separated from Oregon's major metropolitan areas and borders by at least 20 miles.  Although not discussed by the parties, plaintiffs' summary counts as non-Oregon citizens at least nine potential claimants who list addresses at post office boxes that are not in Oregon.  These include James Mischkot, Sr. (Whitehall, Montana); Dennis, Deborah, and Cleta Buss (Chehalis, Washington); Richard Townsend (Three Forks, Montana); Clayton & Joan Ellington (Homer, Alaska); Susan Tessem (Miami, Florida); and Tamara Dixon (San Diego, California).  Gill Decl., Ex. D, pp. 16, 48, 54, 80, 99 & Ex. F, p. 20.

---

[12]  An additional individual, Edgar C. Brown, is listed at a P.O. Box in Oregon, but is not listed as an Oregon citizen.  Stephens Supp. Decl., Ex. 1, p. 1.

[13]  The first name is not given on the individual "Folkerts" entry.  However, on the same page, "Lura E. Folkerts" is listed as the Trustee for a trust's claim at a California address.  Stephens Supp. Decl., Ex. 1, p. 6.  On plaintiffs' original submission, "Laura E. Folkerts" is listed as the Trustee of the "L.E. Folkerts Rev. Trust dtd 8-20-97."  Antoine Decl., Ex. B, p. 2.

Common sense dictates that post office boxes located in small rural communities far from any major metropolitan area likely belong to individuals who live nearby and either may not have regular mail delivery or simply choose to have their mail secured in a post office box. There is room for debate as to the likelihood that post office boxes in large metropolitan areas are used by someone who lives nearby or in another state, just as there is room for debate over the likelihood that any of those individuals who are listed at non-Oregon post office boxes are in fact Oregon citizens who just happen to have a post office box in another state. However, there is no debate that the "worst case scenario" on the post office box issue from plaintiffs' standpoint is to move all 18 of the individuals listed at an Oregon post office box from the Oregon citizen column to the non-Oregon citizen column.

Based on the above information, this court excludes Robert Holcomb from the list entirely and moves out of the "Oregon" column an additional 21 potential class members for whom plaintiffs have failed to provide sufficient evidence concerning their citizenship (three suspect entities and 18 individuals with post office box addresses). Nevertheless, even with those changes, 500 (501-1) potential class members remain, 344 (366-22) of whom are Oregon citizens (68.8% of the class) and 156 of whom are non-Oregon citizens.

The remaining categories of class members challenged by defendants include persons: (1) who "appear to be identified only as having some joint or beneficial interest (together with other listed and counted persons) in or to the Berjac accounts;" (2) identified "solely on the basis of the association with [various Berjac] accounts;" and (3) "minor children and other persons . . . who appear not to have acquired for themselves the interests in the Berjac accounts . . . ." Gill Supp. Decl., ¶ 3(a), (d). These challenges strike at alleged assignees, transferees, co-claimants, and minors, identified on the basis of things such as instances where: (1) more than one name is

listed as involving the same Berjac account number; or (2) more than one name is listed at the

same address on either the Claims Register (Gill Decl., Ex. D), Amended Schedule F (*id*, Ex. F),

or on the claim form (*id*, Ex. U).

Defendants appear to assert that these categories may involve a miscount (and

unwarranted increase in the number of Oregon citizen class members) of more than 170 persons,

consisting of "more than 120" possible joint or beneficial owners and "more than 50 minor

children and other persons."  Gill Supp. Decl., ¶ 3(a), (d).  However, the record suggests a far

more limited impact on the listing of Oregon citizen class members.

First, plaintiffs removed, for various reasons, a number of these alleged over-counts when

they submitted their updated list.  Stephens Supp. Decl., Ex. 1.

Second, substantial overlap exists between the persons challenged in these various ways.

All but eight of the 49 individual potential class members identified by defendants as those who

"did not acquire Berjac interests" (Gill Decl., Ex. O) are also listed as persons purportedly

"having only a joint/beneficial interest" (*id*, Ex. N).  Similarly, at least 15 of the persons

challenged as having the same account number as another potential class member (Gill Supp.

Decl., ¶ 3(a)) are the same persons challenged as persons "who did not acquire Berjac interests"

(Gill Decl., ¶ 3(d) & Ex. O).  Similarly, overlap exists between some of the persons challenged

as being minors and challenged as having the same account number as another listed class

member.

In total, defendants challenge 133 individuals, including 125 as having only a joint or

beneficial interest (*id*, Ex. N) and an additional eight (non-duplicative) who "did not acquire

Berjac interests" (*id*, Ex. O).  Some of these have already been eliminated from consideration as

Oregon citizens in plaintiffs' updated list.  *See, e.g.*, Stephens Suppl. Decl., Ex. 1, p. 1 (no entry

for Matthew C. Davis, Sr.; Edgar C. Brown, Jack Chasteen, Taylor Lundquist, and Hunter Lundquist counted in the "Other" column). Most are challenged simply because both names are listed at the same address on the bankruptcy claim forms and Amended Schedule F. A review of the declarations submitted by plaintiffs indicates that many of the potential class members who jointly own Berjac securities live in Oregon with the Berjac account statements mailed to only one Oregon address. Accordingly, even if two joint owners of one account should not be listed, that means only about half of the 133 individuals must be excluded. The other half of the joint owners are Oregon citizens and appropriate class members to allege claims based on the jointly held accounts.

Based on the above, this court concludes that it is highly unlikely that it would be appropriate to eliminate each of the 133 challenged potential class members from consideration. Even if as many as 32 of these 133 challenged potential Oregon class members were eliminated, the number of Oregon citizens is right at the critical two-thirds mark. Starting with the adjusted number above, and subtracting 32 Oregon citizens, leaves 468 (500-32) potential class members, 312 (344-32) of whom are Oregon citizens, representing two-thirds of the class. Even if all 133 were excluded from the class entirely, nearly 60% of the class (57.5%) would still be Oregon citizens.[14]

In sum, despite the volume of materials in the record challenging from various angles the information submitted concerning the citizenship of the potential members of the plaintiff class, this court is left with the firm conviction that more than two-thirds – or if not two-thirds, then most assuredly close to two-thirds – of the potential members of the class are Oregon citizens.

---

[14] Starting with the adjusted number above, and subtracting 133 Oregon citizens, leaves 367 (500-133) potential class members, 211 (344-133) of whom are Oregon citizens, representing 57.5% of the class. Assuming that, rather than eliminating these 133 challenged class members entirely, they are moved out of the Oregon citizen column to the non-Oregon citizen column (an approach mathematically more favorable to defendants' position), still results in a class comprised of over 40% Oregon citizens. Again starting with the adjusted number above, that assumption results in 500 potential class members, 211 (344-133) from Oregon, and 289 (156+133) from elsewhere, for a total of 42.2% from Oregon.

Thus, plaintiffs have met their burden of proving that the "local controversy" and "home state"

exceptions to the CAFA apply, requiring this court to decline to exercise CAFA jurisdiction.

**D. "Interests of Justice" Exception**

As discussed above, even assuming that defendants are correct that every one of the 133

challenged potential class members should be either eliminated from consideration or moved to

the non-Oregon citizen column,  the new potential class would result in either 57.5% or 42.2% of

the potential class members being Oregon citizens, or well over one-third.  And even if

plaintiffs' math (as adjusted in favor of defendants by this court) is off by as much as 20%, they

would nonetheless establish that at least one-third of the members of the plaintiff classes are

Oregon citizens.[15]  Either scenario brings the "interests of justice" exception into play.

Defendants argue that, whether or not the number of Oregon citizen class members is

sufficient, consideration of the factors listed in 28 USC § 1332(d)(3)(A)-(F) weigh against this

court exercising its discretion to decline to exercise CAFA jurisdiction.  Those factors include:

> (A) whether the claims asserted involve matters of national or
> interstate interest; (B) whether the claims asserted will be governed
> by laws of the State in which the action was originally filed or by
> the laws of other States; (C) whether the class action has been
> pleaded in a manner that seeks to avoid Federal jurisdiction;
> (D) whether the action was brought in a forum with a distinct
> nexus with the class members, the alleged harm, or the defendants;
> (E) whether the number of citizens of the State in which the action
> was originally filed in all proposed plaintiff classes in the
> aggregate is substantially larger than the number of citizens from
> any other State, and the citizenship of the other members of the
> proposed class is dispersed among a substantial number of States;
> and (F) whether, during the 3-year period preceding the filing of
> that class action, 1 or more other class actions asserting the same
> or similar claims on behalf of the same or other persons have been
> filed.

---

[15]  Assuming the adjusted class size of 500, the number of Oregon citizen class members identified by plaintiffs would have to decline from 211 to 164 in order to fall below the one-third mark of the "interests of justice" exception.  Nothing in the record remotely suggests that anything approaching an additional 50 of the class members are improperly identified as Oregon citizens.

Several of these factors clearly weigh in favor of applying the "interests of justice" exception.  In particular, the case was filed in Oregon where the vast majority of potential class members are citizens.  There can be no debate that the action was brought in a forum with a distinct nexus with the class members, the alleged harm, and the defendants.

Defendants point out that plaintiffs' claims assert only "derivative liability" based upon the conduct of the three bankruptcy debtors, that plaintiffs seek the same relief in the form of claims filed in the bankruptcy proceeding, that the plaintiffs make up a majority of the Creditors' Committee in the Berjac bankruptcy, and that J&R has filed a proof of loss claim in the bankruptcy proceedings involving debtors Gary and Michael Holcomb.  Without explanation, defendants contend from these facts that a federal forum has a greater nexus to this case and that the exact same relief is sought in the bankruptcy proceeding, such that the fourth and sixth factors favor federal court.  However, whatever this court's nexus to this case, it is nevertheless unquestionable that the Oregon court in which this case was filed has a "distinct nexus with the class members, the alleged harm, or the defendants," making that factor either counsel in favor of applying the exception or neutral based on the fact that both fora have the required nexus. Furthermore, defendants admit that no other class action asserting the same or similar claims has been asserted in either federal or state court, making the sixth factor weigh in favor of applying the interests of justice exception.  Finally, both the initial Complaint and the proposed Revised FAC allege exclusively Oregon securities or common law claims, and nothing in the voluminous record thus far indicates that the law of some other state will apply to those claims.

As plaintiffs' submissions show, the number of citizens of Oregon in the proposed plaintiff class in the aggregate is substantially larger than the number of citizens from any other state.  The citizenship of the other members is dispersed among at least 19 states, including

Alaska, Arizona, California, Colorado, Florida, Hawaii, Idaho, Illinois, Maryland, Michigan, Minnesota, Montana, Nevada, New York, Oklahoma, South Carolina, South Dakota, Texas, and Washington. Stephens Supp. Decl., Ex. 1. Thus, the fifth factor favors application of the exception.

This leaves only the question of whether the class action has been pled in a manner that seeks to avoid federal jurisdiction. Defendants proffered two arguments to establish that this factor weighs against applying the exception, namely that: (1) plaintiffs had not named the bankruptcy debtors (allegedly the primary wrongdoers) as defendants; and, later, that (2) plaintiffs attempted to revise their pleadings by submitting their initial FAC to eliminate as class members any plaintiff who was not an Oregon citizen. The first contention must be rejected. Irrespective of whether the case was filed as an adversary proceeding in Bankruptcy Court, this court would nevertheless have jurisdiction over the case due to the "related to" provision of the Bankruptcy Code, 28 USC § 1334(b), which is one of the statutes defendants relied on in filing their Notice of Removal. Consequently, it is of no moment whether the bankruptcy debtors were or were not named as defendants in plaintiffs' original Complaint filed in state court. As for the second argument, the proposed Revised FAC guts the contention that plaintiffs are attempting to avoid federal jurisdiction by including only Oregon citizens as plaintiffs. Thus, despite all the ink devoted to the topic prior to the filing of the Revised FAC, this court perceives no game-changing that must be attributed to the third factor.

In sum, the factors identified in 28 USC § 1332(d)(3)(A)-(F), taken as a whole, weigh heavily in favor of applying the "interests of justice" exception. While the "minimal diversity" requirements of CAFA, 28 USC § 1332(d)(2)(A), are met, this case involves primarily Oregon citizen plaintiffs, with the remaining plaintiffs hailing from a smattering of other states; Oregon

defendants who inflicted harm by means of a financial enterprise centered in Oregon; Oregon claims which will be governed by Oregon law; no counterpart class action pending in any other state or federal court; and no overriding national or interstate interest.

The number of investors miscounted as Oregon citizens would fall well short of the more than 150 required to reduce the total number of Oregon citizen investors below the one-third mark. Either the number of Oregon citizens in the plaintiff classes exceeds two-thirds of the total number of members or, if it misses that mark, the number nevertheless falls above the one-third mark sufficient to invoke the "interests of justice" exception. Thus, as an alternative to applying the "local controversy" and "home state" exceptions, this court should exercise its discretion to apply the "interests of justice" exception. Either way, this court should grant plaintiffs' motion and decline to exercise the "minimal diversity" jurisdiction it admittedly has under the CAFA.

## V.     **Reference to the Bankruptcy Court**

Having decided that 28 USC § 1453 provides no independent basis for jurisdiction and that this court should decline to exercise the jurisdiction it has under the CAFA, 28 USC § 1332(d)(2), the only remaining basis for jurisdiction is the "related to" provision of the Bankruptcy Code, 28 USC § 1334(b). As discussed above, this case is unquestionably related to three bankruptcy proceedings.

Under Local Rule of Bankruptcy Procedure 2100-1(a), the District of Oregon has referred to the Bankruptcy Court "all cases under Title 11 and all proceedings under Title 11 or arising in or related to cases under Title 11." However, "[i]n the interest of justice, a judge may suspend or modify the application of these rules." LR 1-4. Defendants suggest that this court should invoke its authority under LR 1-4 to not refer this case to the Bankruptcy Court under LR 2100-1.

This court has used LR 1-4 to dispense with technical pleading requirements, such as page limitations or citation format, to change case schedules, or to waive the requirement to file certain documents such as Concise Statements of Material Fact (no longer required), Joint Alternative Dispute Resolution Reports, or Pretrial Orders.  However, such use of LR 1-4 differs significantly from using it to alter case assignment rules.  Both LR 3-2, describing the divisions of this court, and LR 2100-1, at issue here, divide the work of the various divisions of Oregon's federal courts based on geographic considerations and the substantive content of the underlying claims.  Local rules are no small matter:  "District judges must adhere to their court's local rules, which have the force of federal law. . . . 'Courts enforce the requirement of procedural regularity on others and must follow those requirements themselves.'"  *In re Corrinet*, 645 F3d 1141, 1146 (9th Cir 2011), quoting *Hollingsworth v. Perry*, 558 US 183, 184 (2010).  This court is not persuaded that it should use LR 1-4 to dispense with the clear case assignment mandate embodied in LR 2100-1 when this case is related to three bankruptcy proceedings.  Accordingly, this case should be referred to the Bankruptcy Court for further proceedings pursuant to LR 2100-1(a).

**VI.    <u>Equitable Remand</u>**

Plaintiffs also argue that, under 28 USC § 1452(b), this court should remand to state court on "equitable grounds" any claim over which it has jurisdiction under 28 USC § 1334.  Defendants disagree and urge this court, rather than the Bankruptcy Court, to decide that issue in the first instance.  Were this court to do so, it would again be running roughshod over the case assignment procedures set out in its local rules.  Because this court has jurisdiction only under 28 USC § 1334(b) for cases "related to" the Bankruptcy Code and because LR 2100-1 requires referral of cases related to Title 11 to the Bankruptcy Court, the "equitable remand" matter is one

which should be addressed initially by the Bankruptcy Court.  *See McDowell Welding & Pipefitting, Inc. v. U.S. Gypsum Co.*, 285 BR 460, 475-76 (D Or 2002).  Accordingly, this court expressly defers any ruling on that matter, addressed in the parties' submissions (docket #20, Sections VII (B) & (C); docket #34 (Section VI); and docket #39 (Section III)).

## RECOMMENDATIONS

Plaintiffs' Motion for Leave to File a First Amended Complaint (docket #42, as amended by docket #51) should be GRANTED.

Plaintiffs' Motion to Decline to Exercise Jurisdiction, to Abstain, and to Remand (docket #19) should be:  (1) GRANTED to the extent plaintiffs seek to have this court:  (a) decline to exercise the jurisdiction it admittedly has under the CAFA, 28 USC § 1332(d)(2); and (b) exercise jurisdiction over this case only under 28 USC § 1334(b); and (2) DEFERRED to the extent plaintiffs seek to have the case remanded to state court on equitable grounds under 28 USC § 1452(b).  Accordingly, this case should be REFERRED to the United States Bankruptcy Court for the District of Oregon under LR 2100-1(a) for a decision on the deferred issue.

## SCHEDULING ORDER

The Findings and Recommendations will be referred to a district judge.  Objections, if any, are due Monday, August 25, 2014.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

DATED  August 8, 2014.

_____
s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge
